IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| RYAN ALAN FERGUSON,         } | |
| } | |
|     Plaintiff,         } | |
| } | |
| v.         } | Civil Action No.: 5:12-CV-01925-RDP |
| } | |
| MICHAEL J. ASTRUE,         } | |
| Commissioner of         } | |
| Social Security,         } | |
| } | |
|     Defendant.         } | |

**MEMORANDUM OF DECISION**

Plaintiff Ryan Alan Ferguson ("Plaintiff") brings this action pursuant to Sections 205(g) and 1631(c) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability, disability insurance benefits ("DIB"), and Social Security Income ("SSI") benefits under the Act. *See also*, 42 U.S.C. §§ 405(g), 1383(c)(3). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

This action arises from Plaintiff's application for disability, DIB, and SSI filed on March 27, 2009. (Tr. 100, 102, 162, 179). Plaintiff alleges his disability began on March 7, 2009. (*Id.*). The Social Security Administration initially denied Plaintiff's applications on July 7, 2009. (Tr. 66-67, 76-80). On September 28, 2009, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 82). Plaintiff's request was granted and a hearing was held on September 2, 2010. (Tr. 37-63, 87, 94). In his November 5, 2010 decision, the ALJ

concluded Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act. (Tr. 13-24).  After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.  (Tr. 1-3, 8). 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff was thirty-one years old at the time of the hearing.  (Tr. 40).  Plaintiff alleges his disability began March 7, 2009 and that he suffers from pelvic displacement, ADHD, asthma, and tick disorder.[1]  (Tr. 167).  Plaintiff has previously worked at shops, fast food restaurants, and a food processing plant.  (Tr. 143-50).  Although Plaintiff alleges he has been unable to engage in substantial gainful activity since March 7, 2009, he acknowledged that he was laid off due to job performance and reported seeking employment.  (Tr. 167, 234-35, 239-40)

On August 28, 2008, Plaintiff visited Cullman Internal Medicine and saw Dr. Lane Friedman.  (Tr. 232).  Dr. Friedman found Plaintiff was in "generally [] good health," but noted he suffered from chronic weight issues and urged him to decrease his weight.  (Tr. 232-33). Although Plaintiff reported recently losing twenty pounds, Dr. Friedman indicated he was obese at a weight of 291 pounds.  (*Id.*).  Dr. Friedman referred Plaintiff to Dr. Gregory Windham for a physical examination.  Upon examination, Dr. Windham detected "firmness palpable in the right periumbilical region," which he believed could be a hernia.  (Tr. 218-19, 229).  After a follow-up CT scan of Plaintiff's abdomen and pelvis on March 5, 2009, Dr. Windham's opinion was that Plaintiff did not have a hernia, but "probably has a lipoma."  (Tr. 215, 228).  Plaintiff declined surgery as an option and indicated he would follow-up if necessary.  (216, 228).

On December 31, 2009, Plaintiff was seen at Cullman Internal Medicine complaining of lower back pain for the past nine months.  (Tr. 226).  An x-ray was attempted, however, at a

---

[1] Plaintiff previously filed for disability on September 8, 2001 and November 25, 2003.  Plaintiff's applications were denied on each occasion. (Tr. 163).

weight of 346 pounds, Plaintiff was too heavy for their equipment and was given orders to have the x-ray taken at the hospital. (Tr. 226-27). Plaintiff was prescribed Flexeril and Ultram for his back pain as needed. (Tr. 227). On April 26, 2010, Plaintiff underwent an ultrasound at Cullman Radiology Group, P.C. by Dr. Jeffrey Nicholson. Dr. Nicholson found Plaintiff to have a normal liver, no focal or diffuse abnormalities, and an "unremarkable" gallbladder, common hepatic duct, and right kidney. (Tr. 223).

In a follow-up with Dr. Friedman on April 29, 2010, Plaintiff's lab results showed a mild increase in blood sugar, hyperlipidemia and some mild abnormal liver tests, and a normal abdominal ultrasound. (Tr. 221). At that time, Plaintiff weighed 357 pounds, an increase of eleven pounds in four months. Dr. Friedman noted Plaintiff experienced shortness of breath after minimal exertion and that his activities were limited by hip problems. (*Id.*). Dr. Friedman diagnosed Plaintiff with probable mild hypertension, morbid obesity, abnormal Liver Function Tests ("LFTs"), probable diabetes mellitus, and hyperlipidemia. (Tr. 222). According to Dr. Friedman, Plaintiff's abnormal LFTs were "almost certainly" due to his fatty liver. (*Id.*). Dr. Friedman continued Plaintiff's Flexeril, Ultram, and Albuterol prescriptions and added a prescription for Pravastatin. (Tr. 221). At a July 9, 2010 appointment, Dr. Friedman added sleep apnea, asthma, and chronic back pain to his assessment of Plaintiff. (Tr. 317-18). Plaintiff was instructed by Dr. Friedman to use a CPAP machine for his sleep apnea as needed. (Tr. 317). At Plaintiff's last visit to Dr. Friedman on October 12, 2010, Plaintiff denied symptoms from sleep apnea, asthma, or chronic back pain; Dr. Friedman removed these conditions from his assessment. (Tr. 342-44). At that meeting, Plaintiff weighed 349 pounds. (Tr. 342-43).

On June 8, 2009, Dr. Will Crouch performed x-rays of Plaintiff's right hip and spine. (Tr. 280). The x-rays revealed "minimal degenerative changes [] throughout the right hip and

acetabulum," while Plaintiff's spine "appear[ed] normal." (*Id.*). Dr. Crouch's impression was that Plaintiff suffered from minimal degenerative joint disease in his right hip. (*Id.*).

Beginning in October 2009, Plaintiff attended therapy at Mental Healthcare of Cullman ("MHC"). (Tr. 261). Plaintiff repeatedly reported depression and suicidal ideations to practitioners at MHC. (Tr. 235, 246, 252, 259, 261). Dr. Kazi Ahmad performed a psychiatric evaluation of Plaintiff and found he was alert and oriented, his concentration was "good," his attention and comprehension were within normal limits, and his interpersonal behaviors were within normal limits; however, his fund of knowledge was limited. (Tr. 254, 256). Despite Plaintiff's reported suicidal ideations, Dr. Ahmad's risk assessment indicated that Plaintiff did not pose a high risk to himself or others. (Tr. 256). Dr. Ahmad diagnosed Plaintiff with "major depression with psychosis" and prescribed Celexa for his depression and anxiety, and Vistaril for his agitation. (Tr. 257). At a follow-up appointment on November 20, 2009, Plaintiff and his brother reported that, after a few days of medication, Plaintiff was less angry, fought less, and had no suicidal thoughts. (Tr. 250).

About two months later, however, on January 13, 2010 Plaintiff reported mood swings and that he was not using the CPAP for his sleep apnea. (Tr. 248). Dr. Sultana Begum noted Plaintiff's mood was depressed, anxious, and irritable and his affect was anxious. (Tr. 249). Approximately three weeks later, Plaintiff's mother reported he was "doing great" and his depression and anxiety were better. (Tr. 245). On the next few visits, Gloria Noah noted that Plaintiff was taking the medications as prescribed, his mood was stable, and he "feels good." (Tr. 235, 239, 241). On March 31, 2010 and May 5, 2010 (over a year after his alleged disability onset date), Plaintiff reported that he wanted to find a job, but had not been successful. (Tr. 234-35, 239-40). Plaintiff was seen on four occasions from October 2010 through April 2011 and

reported his mood as "doing great," "fairly well," "fine," and "feeling better." (Tr. 346, 348, 350, 352). At these meetings, a minor adjustment was made in Plaintiff's prescription dosage, but otherwise Plaintiff was described as stable. (Tr. 346-53).

On June 13, 2009, Plaintiff was referred by Disability Determination Services ("DDS") to Dr. Bharat Vakharia for a disability examination. (Tr. 274-78). Dr. Vakharia found that Plaintiff weighed 308 pounds. (Tr. 274). He noted that Plaintiff's movement of his cervical spine was limited by neck and back pain; movement of his right hip was significantly limited; he experienced lower back pain from flexing his knee; was walking with a minimal limp on his right leg; and could not squat more than seventy degrees because of lower back and hip pain. (Tr. 274-76). Dr. Vakharia also noted Plaintiff's previous diagnosis of a tilted pelvis and scoliosis, which has caused moderate, on and off, pain in Plaintiff's lower back and right hip since he was fifteen years old. (Tr. 274).

Dr. Mary Arnold, Psy. D., performed a psychological evaluation of Plaintiff on June 30, 2009. (Tr. 282). Dr. Arnold stated that Plaintiff's mood and affect are "congruent in the normal range" and that he was alert and oriented. (Tr. 286). Plaintiff was able to respond to questions regarding his fund of information and his abstract reasoning ability, his speech was fluid, he made eye contact, and his response times were within "the usual range." (*Id.*). Dr. Arnold estimated that Plaintiff's full-scale intelligence quotient ("FSIQ") in the low average range. (*Id.*). Dr. Arnold's diagnostic impression included Plaintiff's self-reported ADHD, a global assessment of functioning ("GAF") score of 60, a history of individualized education programs through the twelfth grade, in addition to his prior physical diagnoses. (Tr. 287). Plaintiff also told Dr. Arnold that his daily activities included dressing independently, cleaning his room, washing

dishes, performing yard and garden work, feeding his family's animals, going to the lake and to a fireworks show, and playing basketball for short periods. (*Id.*).

A physical summary was prepared by Dr. Glenn Carmichael on July 9, 2009. Dr. Carmichael recommended a light residual functional capacity ("RFC") for Plaintiff, with occasional postural, and safety precautions based on his degenerative disk disease and morbid obesity. (Tr. 292). On July 24, 2009, Dr. Guendalina Ravello, Ph. D., performed a psychiatric review technique of Plaintiff's medical evidence of record. (Tr. 293-306). Dr. Ravello determined that Plaintiff possessed the following disorders: organic mental disorders, including ADHD and a learning disability; a history of mood disorder; and a history of OCD. (Tr. 294, 298). Dr. Ravello opined that Plaintiff possessed the following functional limitations: a moderate limitation in maintaining concentrations, persistence, or pace; a mild restriction in his daily living activities; no limitation in his ability to maintain social functioning; and no episodes of decompensation of extended duration. (Tr. 303). In conclusion, Dr. Ravello found that Plaintiff did not satisfy the "B" criteria of the listings, and "the evidence does not establish the presence of the 'C' criterion" for either Plaintiff's organic mental, affective, or anxiety-related impairments. (Tr. 304).

On the same date, Dr. Ravello evaluated Plaintiff's Mental RFC. (Tr. 307). He concluded that Plaintiff has moderate limitations in the following abilities: understanding and remembering detailed instructions; maintaining attention and concentration for extended periods; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms; and performing at a consistent pace without an unreasonable number and length of rest periods. (Tr. 307-08). In his

RFC assessment, Dr. Ravello recommended that Plaintiff, based on his limited ability for sustained concentration and persistence, do the following: work at his own work station to limit distractions from others; avoid excessive workloads, quick decision making, rapid changes and multiple demands; attend to simple tasks for two hours with all customary breaks; and have casual supervision. (Tr. 309). In the categories of understanding and memory, social interaction, and adaption, Dr. Ravello concluded that Plaintiff has no limitations. (*Id.*).

At the recommendation of his attorney, Plaintiff visited Dr. Jon Rogers, Ph.D. on August 25, 2010 for a psychological evaluation. (*Id.*). Plaintiff reported a litany of symptoms to Dr. Rogers, who categorized them as depression, anxiety/panic, OCD, manic-like symptoms, unstable interpersonal relationships, impulsivity, and anger. (Tr. 326). Plaintiff reported his physical diagnoses to Dr. Rogers, and indicated that side effects from his medications cause dizziness, light-heartedness, memory problems, difficulty concentrating, forgetfulness, sluggishness, trouble sleeping, constipation, and diarrhea. (Tr. 327). Dr. Rogers noted that Plaintiff was dressed appropriately, nicely groomed, alert, cooperative, had no remarkable mannerisms, his motor activity was average, his affect was flat, and his mood appeared depressed. (Tr. 328). He also determined that Plaintiff's abstraction abilities, thought content, and fund of information were limited. (Tr. 329). Plaintiff possessed a full scale IQ of seventy-one on the Wechsler Adult Intelligence Scale 3rd Edition ("WAIS-III"), which Dr. Rogers indicated places him in the borderline mental functioning range. (Tr. 330). Dr. Rogers determined Plaintiff is functionally illiterate in word reading, numerical operations, and spelling, and has a GAF score of 48. (*Id.*). Dr. Rogers opined that Plaintiff was unable to meet competitive standards in nearly all categories of mental abilities and aptitudes needed to do unskilled work. (Tr. 332-33).

7

**II.    ALJ Decision**

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).   Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled.  20 C.F.R.  § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant

is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ found that: (1) Plaintiff had not engaged in substantial gainful activity since the onset of his alleged disability; (2) his severe impairments include affective mood disorders and osteoarthritis; but (3) his medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr.18-20).

According to the ALJ, Plaintiff's subjective complaints were not credible because of their inconsistency with the medical evidence and his description of his own daily activities. (Tr. 22). The ALJ found Plaintiff's daily activities, which include cooking, shopping, driving, doing chores, and playing basketball, among others, were inconsistent with Plaintiff's complaints of disabling symptoms and limitations. (*Id.*). The ALJ also noted that Plaintiff stopped working because of a "big layoff" (rather than his allegedly disabling impairment) and that he was looking for work, which the ALJ reasoned, indicated that Plaintiff himself believed he can maintain gainful employment. (*Id.*). Little weight was given to the opinion of Dr. Rogers that Plaintiff has serious impairments in social, occupational, and school functioning because his diagnosis was inconsistent with the medical evidence. (*Id.*). Further, the ALJ emphasized that Plaintiff sought Dr. Rogers's examination and opinion not for treatment purposes, but through an attorney referral. (*Id.*).

After consideration of Plaintiff's subjective complaints, his daily activities, and the medical evidence, the ALJ found that Plaintiff has the RFC to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that Plaintiff is additionally limited to unskilled work. (Tr. 21). At step four, in determining whether Plaintiff could perform his past relevant work, the ALJ considered the testimony of the vocational expert ("VE"). (Tr. 23). The VE testified that Plaintiff's previous jobs, as a fast food worker and assembler, were each light unskilled work and his job as an industrial cleaner was an unskilled medium job. (Tr. 55). After reviewing the exhibits in the file, the VE testified that, in his opinion, Plaintiff had the RFC to perform his past work as a fast food worker and assembler. (Tr. 56). Comparing Plaintiff's RFC with the VE's testimony regarding the physical and mental demands of his past relevant work, the ALJ found that Plaintiff is capable of performing his past relevant work as a fast food worker and assembler under 20 C.F.R. §§ 404.1565 and 416.965. (Tr. 23). The ALJ concluded that Plaintiff has not been under a disability as defined by the Act and is not entitled to a period of disability, DIB, or SSI. (Tr. 23). 20 C.F.R. §§ 404.1520(f) and 416.920(f).

### III.    Plaintiff's Argument for Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (Pl's. Br. at 9). Although Plaintiff has divided his discussion into two topics, in the interest of carefully examining the merits of Plaintiff's claim, the court has scrutinized his brief and found three specific allegations for review. (Pl.'s Br. at 5-8). Plaintiff argues the ALJ erred (1) in his evaluation of Plaintiff's functional limitations due to obesity; (2) by improperly weighing the medical evidence of record, including

10

the opinions of Dr. Rogers when determining Plaintiff's mental RFC; and (3) by improperly questioning the VE and improperly relying on the VE's testimony.[2] *Id*.

## IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's

---

[2] At several points in the record, there are references to Plaintiff's "pain." A claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms requires (1) evidence of an underlying medical condition and (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If supported by medical evidence, a claimant's subjective testimony may satisfy the pain standard and support a finding of disability. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). On this appeal, Plaintiff does contend his "pain" is disabling. Accordingly, even though there are references to his pain in the record, that is not an issue before this court.

11

findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.  Discussion**

After careful review, and for the reasons stated below, the court concludes the ALJ's decision is supported by substantial evidence and correct legal standards were utilized.

> **A.  The ALJ's Physical Residual Functional Capacity Findings are Based on Substantial Evidence**

Plaintiff claims the ALJ failed to follow SSR 02-1p when evaluating the limitations caused by his obesity, and thus erred in his Physical RFC finding. (Pl.'s Br. at 6). SSR 02-01p specifically contemplates obesity serving as a functional limitation, either singularly or in combination with other impairments. To be sure, some courts have found that obesity may serve as a functional limitation. *See Thomason v. Barnhart*, 344 F. Supp.2d 1326 (N.D. Ala. 2004); *Early v. Astrue*, 481 F. Supp.2d 1233 (N.D. Ala. 2007).  However, here, both the objective medical evidence and Plaintiff's daily activities constitute substantial evidence supporting the ALJ's finding that Plaintiff's complaints of limitations were not credible and his obesity was not a limitation on his RFC.  (Tr. 21-23). *See Lewis v. Comm'r of Soc. Sec.*, 487 Fed. App'x. 481 (11th Cir. 2012) (holding that the ALJ properly found claimant's morbid obesity was a severe impairment and that, despite his obesity, the claimant retained the RFC to perform light work).

When determining a claimant's RFC, first the ALJ finds what medically determinable impairments could reasonably be expected to cause a claimant's symptoms and pain. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.9120(e), 416.945. Here, the ALJ determined Plaintiff's obesity is a severe impairment.  (Tr. 23).  The ALJ then evaluates the intensity, persistence and limiting effect of the symptoms derived from a claimant's impairments to determine whether they limit his functioning. 20 C.F.R. §§ 404.1529, 404.1545, 416.929, 416.945.

Here, the ALJ determined that Plaintiff's daily activities are inconsistent with the alleged disabling limitations and constitute substantial evidence supporting the ALJ's finding that Plaintiff's claimed limitations due to obesity are not credible. (Tr. 21-23). While it is true that performing household chores is not enough, in and of itself, to immediately rule out disability, *see Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), the ALJ may consider a claimant's daily activities in determining how much his symptoms limit his ability to work. 20 C.F.R. § 404.1529(c)(3)(i); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (stating that the ALJ may consider daily activities at the fourth step of the sequential evaluation process); *Hennes v. Comm'r of SSA*, 130 Fed. App'x. 343, 348-49 (11th Cir. 2005) (claimant's complaints "were belied by her testimony that she could shop for groceries and cook meals with her husband, put clothing in the washing machine, fold and hang clothing, and crochet."). Plaintiff's daily activities include: preparing meals; "fix[ing]" his car; performing household chores, including his own laundry; playing video games; caring for his family's cats, goat, and pig; leaving the house on his own and driving; shopping for groceries up to five times in a month;[3] playing video games four nights a week and basketball twice a week; and an ability to pay bills, count change, handle a savings account, and use a checkbook. (Tr. 42, 44, 154, 157, 158). Plaintiff's daily activities consist of much more than simple household chores, are inconsistent with his complained of limitations, and constitute substantial evidence supporting the ALJ's finding that Plaintiff's claimed limitations are not credible. 20 C.F.R. § 404.1529(c)(3)(i); *Macia*, 829 F.2d at 1012.

The ALJ specifically stated that the inconsistency between Plaintiff's subjective complaints regarding the severity of his symptoms, the objective medical evidence of record, and

---

[3] Plaintiff testified at the hearing that he shops for groceries once a month; however, his testimony is inconsistent with his previous statement that he shops for groceries five times a month. (Tr. 44, 157).

13

his own daily activities were the basis for discrediting his complaints. The ALJ's RFC finding is supported by substantial evidence and the proper legal standards were applied. (Tr. 21-23). *Marbury*, 957 F.2d at 839; *Foote*, 67 F.3d 1553, 1562 (11th Cir. 1995) ("A clearly articulated credibility finding with substantial supported evidence in the record will not be disturbed by a reviewing court").

> B.   **The ALJ's Mental Residual Functional Capacity Findings are Supported by Substantial Evidence and He Did Not Err in Assessing the Opinion of Dr. Rogers**

Plaintiff next contends that the ALJ erred by (1) failing to derive any mental RFC findings; (2) not considering his affective disorders when determining his RFC; and (3) rejecting the opinion of Dr. Rogers. (Pl's. Br. at 7-8). The proper procedure for determining a claimant's RFC is a two-step process. First, the ALJ determines whether a claimant has medically determinable impairments that could reasonably be expected to produce the claimant's alleged pain or symptoms. Second, the ALJ evaluates the intensity, persistence and limiting effect of the claimant's symptoms to determine whether they limit the claimant's functioning. 20 C.F.R. §§ 404.1529, 404.1545, 416.929, 416.945. The ALJ considered Plaintiff's affective disorders as medically determinative impairments that could reasonably produce Plaintiff's symptoms. (Tr. 18, 21-22). However, the ALJ determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible. (Tr. 22). With specific regards to the intensity of Plaintiff's affective disorders, the ALJ relied on evidence that Plaintiff's mental health had improved since he began a treatment regime. (Tr. 22, 340-53). Notably, this improvement was reported at Cullman Internal Medicine and Mental Healthcare of Cullman between October 8, 2010 and April 15, 2011; this is after Dr. Rogers's August 25, 2010

examination of Plaintiff and is inconsistent with the symptoms and limiting effects found by Dr. Rogers. (Tr. 326-34, 340-53).

The ALJ's decision to give little weight to Dr. Rogers's opinion is supported by substantial evidence. Dr. Rogers examined Plaintiff on only one occasion, did not prescribe any medications, or recommend a treatment plan for Plaintiff; therefore, his opinion is not to be given the deferential status of a treating physician. (Tr. 326-44). 20 C.F.R. § 404.1527(c)(2); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) ("Also their opinions are not entitled to deference because as one-time examiners they were not treating physicians.") (citing *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) (rejecting the application of the treating physician rule in the case of a one-time examiner). Moreover, the ALJ may reject any physician's opinion when the evidence of record supports a contrary conclusion, as long as the ALJ states his reasons for doing so. *See, e.g.*, *Bloodsworth*, 703 F.2d at 1240.

The ALJ's stated reasons for giving Dr. Rogers's opinion little weight included his conclusion that it was inconsistent with the medical evidence as a whole and his finding that there was not a treating relationship between Dr. Rogers and Plaintiff. (Tr. 23). In his brief, Plaintiff brings to the court's attention the GAF score assessed by Dr. Rogers and urges the court to reverse and remand this case due to the ALJ's failure to give weight to that particular score. (Tr. 331, Pl's. Br. at 8). However, the inconsistency between the GAF score of 48 assessed by Dr. Rogers and the GAF score of 60 assessed Dr. Arnold is a good example of how Dr. Rogers's opinion is inconsistent with the medical evidence of record. (Tr. 287, 305, 331). Plaintiff also self-reported very different symptoms during his visit to Dr. Rogers compared with his visits to Dr. Arnold, Dr. Friedman, and the practitioners at Mental Healthcare of Cullman. (*Compare* Tr. 326-34 *with* Tr. 285-87, 342-53). The inconsistency between Plaintiff's reports to Dr. Rogers

(that, without question, affected Dr. Roger's opinion) and the objective medical evidence is also substantial evidence supporting the ALJ's decision to discount Dr. Rogers's' opinion.[4]  20 C.F.R. §§ 404.1527(c)(4), 416.9127(c)(4).

### C.     The ALJ Properly Relied on the Vocational Expert's Testimony

Finally, Plaintiff contends that the ALJ relegated the duty to determine Plaintiff's RFC to the VE and gave the VE "carte blanche" authority to "pick and choose" limitations from the record. (Pl.'s Br. at 5). The court disagrees.

Of course, Plaintiff correctly notes that the responsibility for deriving an RFC is the ALJ's—not the VE's. 20 C.F.R. § 404.1546(c). However, Plaintiff misses the mark in assessing the ALJ's use of the VE's testimony. The ALJ did not use the VE's testimony in determining Plaintiff's RFC. (Tr. 21-23). Instead, the ALJ properly considered the medical evidence of record, the opinion evidence, and the testimony of Plaintiff during the hearing, all of which were proper sources when determining Plaintiff's RFC. (*Id.*). *See* 20 C.F.R. §§ 404.1527, 404.1529, 404.1567(b), 416.927, 416.929, 416.967(b). Only after determining that Plaintiff possessed the RFC to perform the full range of light work, with an exception that it must be unskilled work, did the ALJ consider the VE's testimony. (Tr. 21-23).

The ALJ properly questioned the VE regarding Plaintiff's ability to do his past relevant work. Accordingly, the VE's testimony is substantial evidence that supports the ALJ's finding that Plaintiff could do his past relevant work. (Tr. 23, 54-62). *See* 20 C.F.R. § 404.1560(b)(2);

---

[4] This is not a case where the ALJ's sole reason for rejecting a physician's opinion is that it was solicited at the request of an attorney on one occasion. *Cf. Miles v. Chater*, 84 F.3d 1397 (11th Cir. 1996). In *Miles*, the ALJ observed that the opinion of an attorney referred physician "almost invariably conclude[s]" that a claimant is disabled and thereby discredited that opinion without any substantial evidence. *Id.* at 1399-1401. The Eleventh Circuit held that an ALJ's rejection of a physician's opinion based only on their status as attorney-referred, without any substantial evidence, unfairly biased the claimant. *Id.* Here, the ALJ's statement regarding Dr. Rogers's status as an attorney-referred physician is not a reversible error because substantial evidence, in the form of inconsistency with the objective medical evidence and Plaintiff's daily activities, supports the ALJ's determination that Dr. Rogers's opinion is entitled to little weight.

*Hennes*, 130 Fed. App'x. at 346. (holding that a VE's testimony regarding the mental or physical demands of a claimant's past relevant work is substantial evidence that can support an ALJ's finding for step four). The VE testified that Plaintiff's previous work as a fast food worker and a production assembler are each unskilled light jobs according to the Dictionary of Occupational Titles, while Plaintiff's previous work as a sanitary worker is an unskilled medium job. (Tr. 55). Based on the exhibits in the record, the VE testified that Plaintiff would be limited to unskilled light work. (Tr. 55-57). The VE did testify in the alternative that if Dr. Rogers's opinion were valid, that would preclude Plaintiff from performing any work. However, this is of no help to Plaintiff here. As stated above, the ALJ's decision to discredit Dr. Rogers's opinion is supported by substantial evidence. (Tr. 55). Therefore, the VE's testimony is substantial evidence that supports the ALJ's finding at step four that Plaintiff, in light of his RFC finding, is capable of performing his past relevant work as a fast food worker and assembler. (Tr. 23). *See* 20 C.F.R. § 404.1560(b)(2); *Hennes*, 130 Fed. App'x. at 346.

## VI.    Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** on August 28, 2013.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE